UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 13-0067-DCR |
| ) | |
| V. ) | |
| ) | |
| GENARO LOPEZ, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Genaro Lopez is an illegal alien and drug trafficker. On November 13, 2013, he was sentenced to a term of incarceration of 42 months. [Record No. 43] The sentence imposed was within Lopez's non-binding guideline range. However, at the time of the sentencing hearing, the undersigned concluded that a lower term of incarceration would not satisfy several statutory factors of 18 U.S.C. § 3553(a). Following entry of a final Judgment, Lopez sought to appeal this Court's determination but was unsuccessful. On September 5, 2014, a three-judge panel of the United States Court of Appeals for the Sixth Circuit unanimously affirmed this Court's determination, finding the sentence imposed was procedurally and substantively reasonable under the facts presented. [Record No. 52]

On August 25, 2015, Lopez petitioned the Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines. [Record No. 55] But as explained below, a reduction of Lopez's sentence would be wholly inappropriate. As a result, the relief requested through the current petition will be denied.

Lopez was the sole defendant charged in an Indictment filed May 3, 2013, by a federal grand jury. Count 1 of the indictment alleged that Lopez conspired with others to knowingly and intentionally distribute Oxycodone, a Schedule II controlled substance, in Fayette County, Kentucky during the period September 2011 through September 21, 2012, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count 2 alleged that Lopez knowingly and intentionally attempted to possess Oxycodone with the intent to distribute it on February 26, 2013, in violation of the same statutory provisions. [Record No. 1] The Indictment also contained a forfeiture count regarding currency seized from Lopez at the time of his arrest.

Lopez did not proceed to trial. Instead, on July 31, 2013, he entered a guilty plea to Count 1 of the Indictment and agreed to forfeit the currency identified in the forfeiture count. [Record No. 34] The written Plea Agreement tendered to the Court at the time of Lopez's guilty plea contains the following admissions regarding the defendant's drug trafficking activities:

> 3. (a) Beginning in September 2012, a cooperating witness (CW) for the Lexington Police Department advised that an individual known as "Batman" was selling Oxycodone tablets in Lexington Fayette County, Kentucky. "Batman" was from Detroit and was later arrested in possession of a large quantity of Oxycodone 30 mg tablets [and] Oxycodone 15 mg tablets. "Batman" stated that he had been bringing Oxycodone to Lexington Kentucky for several months to sell. One of his customers was later identified as the Defendant.
>
> (b) On or about February 23, 2013, the Defendant contacted "Batman" by text and stated that he wanted to buy Oxycodone. "Batman" advised that he would be in Lexington next week. Though a series of text messages, a meeting spot was arranged in Lexington, on February 26, 2013. The transaction was agreed for the amount of 400 Oxycodone 30 mg tablets for $21 per fill for a total of $8400. When the Defendant arrived at the meeting spot he was arrested by members of the Lexington Metro Police Department. The

> Defendant had in his possession $8,400 in cash. The Defendant admitted that he was there to purchase the 400 tablets and had bought hundreds of pills from "Batman" over the last few months. Further, the Defendant admitted that the $8400 in his possession as [sic] for the purchase of the 400 tablets.

[Record No. 40] Further information regarding Lopez's criminal actions is outlined in the Offense Conduct section of his Presentence Sentence Investigation Report filed in advance of the sentencing hearing. [Record No. 46] Based on his admissions, a total of 1,400 Oxycodone 30 mg tablets were attributed to Lopez's drug trafficking activities. These substances converted to a marijuana equivalency of 281.4 kilograms for purposes of calculating his non-binding guideline range.

Under the 2013 edition of the United States Sentencing Guidelines, the defendant's Base Offense Level was determined to be 26 due to the quantity of drugs attributed to his criminal conduct. However, because Lopez qualified for application of the safety valve under § 5C1.2(a) of the guidelines, his offense level was reduced by two levels. Lopez also qualified for a three-level reduction to his offense level for his acceptance or responsibility, resulting in a Total Offense Level of 21. Lopez did not have other convictions. Therefore, his non-binding guideline range for imprisonment was calculated as 37 to 46 months. [*Id.*]

Under the 2014 edition of the United States Sentencing Guidelines, Lopez's guideline range would be reduced by an additional two levels because the Base Offense Level for the quantity of drugs attributed to him would be 24 rather than 26. This would result in a reduced, non-binding range for imprisonment of 30 to 37 months if the Court were to grant the present motion and apply the guideline revisions to him retroactively.

While the undersigned has the discretion to reduce Lopez's sentence based on recent changes in the United States Sentencing Guidelines, a reduction of his sentence would not be appropriate. Instead, based upon all of the relevant statutory considerations, a sentence of 42 months imprisonment is necessary.

During the sentencing hearing held on November, 13, 2013, the Court explained the reason that Lopez should serve a 42-month term of imprisonment, based primarily on the seriousness of the offense and issues of deterrence.

> First, when the Court considers the nature and circumstances of the offense, it is a serious offense.
>
> The Court also considers the history and characteristics of the defendant. The defendant has been in the United States illegally for some period of years, since he was 14. There would be a natural attraction for him to return illegally; and, therefore, the Court believes that a sentence more toward the middle of the guideline [range] would be necessary to provide that deterrence.
>
> Another factor that would cause this defendant perhaps to return illegally would be the fact that he does have an illegitimate child her through a relationship; and, therefore, when the Court looks at the other factors, again, the factor of deterrence, a sentence in the middle of the guideline range will be necessary, not only for general deterrence but for specific deterrence of this defendant.

[Record No. 49, p. 8]   These concerns and conclusions have not changed.

Previously, the Court concluded that a term of incarceration of 42 months, together with a term of supervised release of three years, was the minimum sentence needed to deter future criminal conduct and meet all statutory goals and objectives of sentencing. In fact, at the conclusion of the sentencing hearing, Defendant Lopez asked why the Court imposed a

term of 42 months when the bottom of his guideline range was lower. In response to this inquiry, the Court again explained its reasoning.

> THE INTERPRETER: The interpreter requests a repetition.
>
> (DEFENDANT LOPEZ) I want to know if I was within 36, why did you give me 42?
>
> THE COURT: Yes, sir. I will certainly explain that to you.
>
> You have a guideline range in the case of 37 to 46 months; 37 at the low end, 46 at the top end. That's the guideline range in your case.
>
> The Court is not required to sentence within the guideline range, but the Court did not find any reason to go below 37 months, which was the bottom of your guideline range.
>
> I determined that based upon the seriousness of the offense and a need to provide deterrence to future criminal conduct primarily, that it was necessary to impose a sentence of 42 months. *That was the minimum sentence that I believed, and do believe, is appropriate in your case.*
>
> And it is the Court's discretion to impose such a sentence.
>
> Do you have any further questions?
>
> THE INTERPRETER (DEFENDANT LOPEZ): No.

(Emphasis added.) [Record No. 49, pp. 14-15]

At this point, a reduced sentence would not provide general or specific deterrence. Further, a reduced sentence would not provide proper punishment for Lopez's very serious criminal activity. And while a reduced sentence would reduce the cost associated with incarceration, such costs savings do not overcome the more appropriate goals of sentencing outlined above. Finally, the Court has examined all other statutory factors and concludes that none support a reduced sentence.

In summary, the recent modifications of the United States Sentencing Guidelines do not affect this Court's original determination that a 42 month sentence for Lopez's federal crime is completely appropriate and necessary. Accordingly, it is hereby

**ORDERED** that Defendant Genaro Lopez's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c) [Record No. 55] is **DENIED**.

This 26th day of August, 2015.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge